COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ASHLEE J. STRAKER, | § | No. 08-14-00112-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | Criminal District Court No. 3 |
| THE STATE OF TEXAS, | § | |
| | § | of Tarrant County, Texas |
| Appellee. | § | |
| | § | (TC# 1310230D) |
| | § | |

## O P I N I O N

Appellant Ashlee Straker was convicted by a jury of intoxication assault and accident involving serious bodily injury arising from a failure to stop and render aid following an auto accident, and was sentenced to concurrent 20-year prison terms. On appeal, Appellant argues (1) the trial court erred in admitting evidence of blood test results without any retrograde extrapolation analysis, (2) the evidence was insufficient to support both convictions, (3) the trial court erred in admitting hearsay evidence and evidence of Appellant's prior marijuana use, (4) the trial court erroneously allowed the prosecutor to ask its expert an improper hypothetical question, (5) the prosecutor engaged in improper jury argument, and (6) cumulative error requires reversal. We affirm.[1]

---

[1] This case was transferred from the Fort Worth Court of Appeals, and we apply the precedent of that Court to the extent required by Tex. R. App. P. 41.3.

# BACKGROUND

On the evening of November 20, 2012, Appellant borrowed a Jeep Cherokee from his girlfriend, Leslie Florez, to attend a party with two of his friends, Lokuekim Kipasa and Donte Pierce. After leaving the party early the next morning, Appellant was driving with Kipasa and Pierce as passengers, when Appellant lost control of the Jeep on a gentle curve in the roadway in a construction zone. The Jeep struck several construction barrels and the curb of the roadway, causing the vehicle to roll over several times, ultimately landing on its roof in a field, over 200 feet from the roadway. Kipasa was partially ejected from the vehicle and run over before he was fully ejected. Pierce was also ejected from the vehicle and landed over 100 feet away from the point he was ejected. Kipasa died at the scene, and Pierce was seriously injured.

Around 2:44 that morning, passers-by reported seeing debris on the roadway near the accident site, and Grand Prairie Police Officers arrived at the scene shortly thereafter. The officers found the Jeep in the field on the side of the highway, flipped over onto its roof, and soon found Kipasa's body and the severely-injured Pierce, who was transported to the hospital by air ambulance. Appellant was nowhere to be found, but the investigating officers located Appellant's cell phone in the wreckage and used it to contact Florez. Florez confirmed the phone belonged to Appellant, that she was the owner of the Jeep, and that she had loaned the Jeep to Appellant the night before.

Appellant had managed to crawl out of the wreckage through the back window of the Jeep and had left the scene of the accident before the police arrived. Appellant obtained a ride from a passing motorist to his mother's house where Florez was waiting nearby for him. Appellant, who was clearly injured and bleeding, informed Florez that he had been in an accident

2

and that he had been unable to find Kipasa and Pierce in the wreckage. Shortly thereafter, two officers arrived at the residence to interview Appellant. Appellant informed the officers that he had been at a party with Kipasa and Pierce, and that he was driving them home because he was the "better off of the three[.]"

The officers suspected Appellant had been intoxicated, based in part on Appellant's statements about having been at a party and that he was driving since he was the "better off of the three," and because the accident was a one-car rollover, and Appellant had left the accident scene and failed to call for help. Appellant was transported to the hospital for treatment, where he voluntarily consented to a blood draw. Appellant's blood was drawn by an emergency room nurse approximately three hours after the accident. The blood specimen tested positive for alcohol, THC (marijuana), and alprazolam (a tranquilizer). The State's expert witness testified about the synergistic effects of combining two controlled substances with alcohol and opined that the combination of drugs would have rendered Appellant intoxicated, making it unsafe for him to drive due to the "multiplication of negative side effects from all three substances."

Appellant was subsequently indicted and found guilty of one count of intoxication assault involving Pierce's injuries, and one count of accident involving serious bodily injury arising from the failure to stop and render aid to Pierce.[2] Appellant pled "true" to a repeat offender allegation in the indictment, and the trial court sentenced Appellant to 20 years in prison on the intoxication assault offense and to 20 years in prison on the failure to stop and render aid offense, with the sentences to run concurrently.

---

[2] Appellant was also convicted of intoxication manslaughter involving the death of Kipasa. Appellant also appealed that conviction, which we considered separately in Appeal No. 08-14-00111-CR. Appellant filed a single brief covering both appeals. Appellant's first issue on appeal relates solely to Appeal No. 08-14-00111-CR, and we do not address that issue in this opinion.

3

**Appellant's Blood Test Results were Scientifically Reliable**

In Issues Seven, Eight, and Ten, Appellant argues the trial court erred in admitting the evidence of his blood test results, which indicated the presence of marijuana and alprazolam in his bloodstream following the accident. Appellant asserts the State failed to demonstrate the test results were scientifically reliable or based on sound scientific theory.

### Standard of Review

A trial court's ruling admitting evidence will not be reversed on appeal absent a clear abuse of discretion. *Jordy v. State*, 413 S.W.3d 227, 231 (Tex.App. – Fort Worth 2013, no pet.) (citing *Tillman v. State,* 354 S.W.3d 425, 435 (Tex.Crim.App. 2011)). The trial court does not abuse its discretion in admitting evidence unless its determination lies outside the zone of reasonable disagreement. *Id.* The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* (citing *Ramos v. State,* 245 S.W.3d 410, 418 (Tex.Crim.App. 2008)).

### Applicable Law

In order for scientific evidence to be admissible at trial, it must be "considered sufficiently reliable as to be of help to a jury[.]" *Reynolds v. State,* 204 S.W.3d 386, 390 (Tex.Crim.App. 2006). Scientific evidence must typically meet three criteria to be admissible: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id.* In the context of breath and blood test evidence, however, the analysis had been modified by Section 724.064 of the Texas Transportation Code. Section 724.064 provides that at the trial of offenses under Chapter 49 of the Penal Code, which includes intoxication assault,

4

"evidence of the alcohol concentration or presence of a controlled substance, drug, dangerous drug, or other substance as shown by analysis of a specimen of the person's blood, breath, or urine or any other bodily substance taken at the request or order of a peace officer is admissible." TEX. TRANSP. CODE ANN. § 724.064 (West 2011). By enacting Section 724.064, "the Legislature has already determined that the underlying science is valid, and that the technique applying it is valid as long as it is administered by individuals certified by, and using methods approved by the rules of [The Department of Public Safety]." *Reynolds,* 204 S.W.3d at 390; *see also Mireles v. Texas Dept. of Pub. Safety,* 9 S.W.3d 128, 131-32 (Tex. 1999) (the Legislature has statutorily recognized the scientific theory and technique behind breath tests). Consequently, both breath and blood specimen test results are "admissible even without proof that the underlying scientific theory is reliable." *Garcia v. State,* 112 S.W.3d 839, 848 (Tex.App. – Houston [14th Dist.] 2003, no pet.) (citing *Slagle v. State,* 570 S.W.2d 916, 921 (Tex. Crim. App. 1978) (concluding the State need not establish a predicate that a breathalyzer examination is a scientifically reliable test)).

Nevertheless, the State must show that the blood specimen was taken by a qualified person, such as a "registered professional nurse" or a "licensed vocational nurse," and that it was taken in a "sanitary place." TEX. TRANSP. CODE ANN. § 724.017 (West Supp. 2016); *see Garcia,* 112 S.W.3d at 848 (for evidence of blood-alcohol concentration to be admissible, there must be evidence showing compliance with Section 724.017). Also, in order to meet the requirements of Rule 702 of the Texas Rules of Evidence, the State must demonstrate that "the specimen was taken and analyzed by individuals who are certified by, and were using methods approved by the rules of [the Department of Public Safety]" and that the technique was properly applied in

5

accordance with the department's rules on the occasion in question. *Reynolds,* 204 S.W.3d at 390-91. These requirements may be met by evidence that the person who performed the test "knows the protocol involved in administering the test and can testify that he followed it on the occasion in question, [but] he need not also demonstrate any personal familiarity with the underlying science and technology." *Id.* at 391.

*Analysis*

Both before and during trial, Appellant objected to the admission of any evidence that he had ingested marijuana and alprazolam prior to the accident, based in part on the argument that the test results lacked a sound and reliable foundational basis. The trial court overruled the objections, and allowed the State to introduce evidence of the test results themselves, together with the testimony of witnesses from the Tarrant County Medical Examiner's Office. The State presented the testimony of Tiffany Flowers, a senior toxicology analyst at the medical examiner's office, and Joyce Ho, a now-retired lab manager in that same office, who testified that they performed the laboratory tests on Appellant's blood specimen and determined that Appellant had "17 nanograms per mil" of alprazolam in his blood at the time of his blood draw, a blood THC level of 5.8 nanograms per mil, and a blood alcohol concentration (BAC) level of 0.07%. Both Flowers and Ho testified to their qualifications to conduct the tests, both witnesses provided detailed testimony indicating they were familiar with the protocols involved in administering the tests, and Flowers testified that the test methods used were commonly used and accepted within the scientific community.

Appellant's arguments are not entirely clear from his briefing. We interpret his arguments in accordance with his trial objections, which focused solely on the State's alleged

6

failure to demonstrate that the blood test results were "scientifically reliable" and based on sound scientific theory. As discussed above, however, the Legislature has already deemed blood tests to be scientifically sound and reliable, and we therefore reject Appellant's claim that the State was required to present any foundational evidence on that particular point. *Reynolds,* 204 S.W.3d at 390.

Moreover, Appellant did not raise any specific objections to the qualifications of the emergency room nurse at the hospital who took Appellant's blood specimen, nor did Appellant contend that the hospital was not a "sanitary" place to take the specimen, as required by Section 724.017 of the Transportation Code. Similarly, Appellant failed to make any specific objections to the qualifications of either Flowers or Ho to perform the tests, and never specifically challenged the methods they used to conduct the tests or their knowledge of those methods.[3] Therefore, we conclude Appellant has waived any challenges to the State's alleged failure to provide adequate foundational evidence prior to the admission of the test results. *See State v. Esparza*, 413 S.W.3d 81, 86-87 (Tex.Crim.App. 2013) (unless the opponent raises an objection, the State, as the proponent of breath test results, was not required to present any foundational evidence to establish its reliability). Issues Seven, Eight, and Ten are overruled.

**The Unextrapolated Test Results were Properly Admitted**

In his Issue Nine, Appellant argues the trial court erred in admitting the blood test results showing the presence of THC and alprazolam, because Dr. Robert Johnson, the Chief

---

[3] The State made clear that it intended Flowers and Ho to testify only regarding the manner in which the test results were conducted, and to have their supervisor, Dr. Robert Johnson, the Chief Toxicologist, interpret the results and explain to the jury how those results applied to Appellant's case. Nevertheless, Appellant attacks the testimony of Flowers and Ho because they did not explain the relevance of the test results to Appellant's intoxication at the time of the accident. Because neither Flowers nor Ho was assigned that task, we address the relevance of the test results in the next issue, in which Appellant challenges the adequacy of Dr. Johnson's testimony.

Toxicologist, could not provide any retrograde extrapolation analysis testimony to demonstrate that the test results were relevant to Appellant's intoxication at the time of the accident.[4] In a related argument, Appellant contends the lack of retrograde extrapolation testimony rendered the test results more prejudicial than probative, and that the trial court should have excluded them under Rule 403 of the Texas Rules of Evidence.[5] We review each argument separately.

### *Standard of Review and Applicable Law*

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Henley v. State*, 493 S.W.3d 77, ___ (Tex.Crim.App. 2016); TEX. R. EVID. 401. Only relevant evidence is admissible, and the trial court's decision whether to admit evidence is reviewed under an abuse of discretion standard. *Id.*; *see also Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App. 2002). However, "[e]vidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart v. State,* 129 S.W.3d 93, 96 (Tex.Crim.App. 2004).

Under Rule 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. In a Rule 403 analysis, a trial court "must balance (1) the inherent probative force of the proffered item of

---

[4] Retrograde extrapolation is the computation back in time of a blood test result to estimate the level of alcohol or other substances in a defendant's body at the time he was driving. *Price v. State,* 59 S.W.3d 297, 300 n.1 (Tex.App. – Fort Worth 2001, pet. ref'd) (citing *Mata v. State,* 46 S.W.3d 902, 908–09 (Tex.Crim.App. 2001)).

[5] Appellant does not make a similar argument regarding the admissibility of the BAC test results. However, he does raise that issue tangentially in his argument that the evidence of his intoxication is insufficient—an issue we address next.

evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006).

A trial court is entitled to broad discretion in ruling on a Rule 403 objection, and great deference is given to the trial court's decision to admit or exclude evidence under Rule 403. *See Powell v. State,* 189 S.W.3d 285, 288 (Tex.Crim.App. 2006); *State v. Mechler,* 153 S.W.3d 435, 439 (Tex.Crim.App. 2005). Under the abuse of discretion standard, we will not overrule a trial court's decision under Rule 403 if the trial court's decision is within the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (opin. on reh'g). The party objecting under Rule 403 has the burden to show that the probative value is substantially outweighed by the danger of unfair prejudice. *Runnels v. State,* 193 S.W.3d 105, 107 (Tex.App. –Houston [1st Dist.] 2006, no pet.).

### *Retrograde Extrapolation Testimony was not a Prerequisite to Admission*

Dr. Johnson testified that he was unable to perform a retrograde extrapolation analysis that would have indicated the level of THC and alprazolam in Appellant's blood at the time of the accident. Appellant contends that without retrograde extrapolation testimony, the test results were not relevant to whether he was intoxicated at the time of the accident. We conclude the test results were admissible.

9

Appellant is correct that the State must prove a defendant was intoxicated at the time of his offense, and not just at the time his blood was drawn. *Kirsch v. State,* 306 S.W.3d 738, 745 (Tex.Crim.App. 2010); *Kuciemba v. State,* 310 S.W.3d 460, 462 (Tex.Crim.App. 2010) (state must establish a "temporal link between the defendant's intoxication and his driving"). However, it is well-settled that retrograde extrapolation testimony is only one method of providing this temporal connection, and therefore, the Court of Criminal Appeals has repeatedly made it clear that retrograde extrapolation testimony is not required in order to prove a temporal connection. *See, e.g., Stewart,* 129 S.W.3d at 97; *Kirsch,* 306 S.W.3d at 743-45; *see also Torres v. State,* 109 S.W.3d 602, 606 (Tex.App. – Fort Worth 2003, no pet.) (noting that the Court of Criminal Appeals has never required retrograde extrapolation evidence as a condition of the admissibility of BAC test results).

Further, courts have recognized that unextrapolated test results based on blood or breath samples taken after a defendant's arrest are relevant in cases in which a defendant is accused of DWI and causing an accident due to intoxication because those results make it more probable that the defendant was intoxicated at the time that he or she drove. *See, e.g., Manning v. State,* 114 S.W.3d 922, 927 (Tex.Crim.App. 2003) (test results indicating the presence of cocaine metabolite in defendant's bloodstream following the accident were "strong evidence" that defendant had consumed cocaine prior to the accident, rendering the evidence relevant and admissible at trial); *Kirsch,* 306 S.W.3d at 745 (unextrapolated BAC results are often "probative to prove both per se and impairment intoxication"); *Mechler*, 153 S.W.3d at 440 (intoxilyzer

10

results are probative whether a defendant consumed alcohol before driving, and are therefore admissible at trial without retrograde extrapolation testimony)).[6]

Accordingly, we reject Appellant's contention that retrograde extrapolation analysis testimony was required prior to admitting evidence of Appellant's test results.

### *The Test Results were Admissible under Rule 403*

Appellant next contends that even if the blood tests results were admissible without retrograde extrapolation testimony, the trial court should have excluded the results under Rule 403 because they were more prejudicial than probative. In making this argument, however, Appellant continues to focus on the State's failure to present any retrograde extrapolation testimony, contending that without this evidence, the jury had no means of evaluating the probative force of the blood test evidence, which in turn, may have confused the jury and caused it to make a decision on an improper basis.

The Court of Criminal Appeals rejected an almost identical argument in *Gigliobianco*, 210 S.W.3d at 640-43. In *Gigliobianco*, the defendant was charged with intoxication manslaughter and similarly argued that his unextrapolated breath test results were more

---

[6] *See also Williams v. State*, 307 S.W.3d 862, 868 (Tex.App. – Fort Worth 2010, no pet.) (unextrapolated intoxilyzer test results were "highly probative" to demonstrate whether a defendant was intoxicated at the time he was driving); *State v. Esparza,* 353 S.W.3d 276, 283-84 (Tex.App. – El Paso 2011), *aff'd,* 413 S.W.3d 81 (Tex.Crim.App. 2013) (breath test results administered several hours after the alleged offense were admissible, even in the absence of retrograde-extrapolation testimony, because the results tended "to make it more probable that he was intoxicated at the time of driving"); *Leblanc v. State,* No. 01-10-00251-CR, 2011 WL 3556952, at *7-8 (Tex.App. – Houston [1st Dist.] Aug. 11, 2011, no pet.) (mem. op., not designated for publication) (evidence of unextrapolated blood test results indicating that defendant had a cocaine metabolite and THC in his system at the time of the blood draw was probative of the defendant's intoxication at the time of the accident, despite expert witness's inability to determine the exact level of the substances in the defendant's blood at the time of the accident); *Dunn v. State,* 176 S.W.3d 880, 883 (Tex.App. – Fort Worth 2005, no pet.) (blood test results demonstrating that the defendant had amphetamine and methamphetamine were relevant to the charged offense of intoxication manslaughter, and were admissible at trial despite the State's failure to specifically tie the presence of the substance to the defendant's lack of normal use of his facilities at the time of the accident); *Owen v. State,* 905 S.W.2d 434, 438–39 (Tex.App. – Waco 1995, pet. ref'd) (the lack of retrograde analysis testimony does not affect the admissibility of the evidence, and is instead merely a factor that goes to the weight of the evidence for the jury to consider).

11

prejudicial than probative because they may have confused or misled the jury and allowed the jury to give the results undue weight. In concluding the trial court did not abuse its discretion in admitting the unextrapolated test results, the Court noted that the test results demonstrated that the defendant had consumed a substantial amount of alcohol thereby tending to "make more probable appellant's intoxication at the time he was driving" and that the State had a "considerable" need for the admission of the breath test results, because the State's evidence did not clearly demonstrate that the defendant was in fact intoxicated at the time of his arrest. *Id.* In balancing these two factors against the possibility of unfair prejudice, the Court concluded that because the test results directly related to the charged offense, they could not have distracted the jury from the main issue in the case whether the defendant was intoxicated while he was driving. *Id.* at 641. Similarly, in light of the clear relevance of the evidence to the issue of appellant's guilt, the time spent by the State in admitting the evidence did not result in undue delay or a needless presentation of cumulative evidence. *Id.* More importantly, the Court determined that because the State's witness had explained that the test results "could not be used to determine what appellant's breath alcohol concentration was at the time he was stopped," the jury was not misled concerning the purpose of the evidence, and instead, could have "reasonably concluded that the jury was equipped to evaluate the probative force of the breath test results." *Id.* at 642.

As in *Gigliobianco*, we find that the test results in the present case were highly probative to Appellant's intoxication at the time of the accident, despite the absence of any retrograde extrapolation testimony, because they were based on a blood draw that took place less than three hours after the accident, with no evidence that Appellant imbibed any alcohol or took any other controlled substance between the time of the accident and the blood draw. *See Verbois v. State,*

12

909 S.W.2d 140, 142-43 (Tex.App. – Houston [14th Dist.] 1995, no pet.) (unextrapolated breath test results based on test conducted two and one-half hours after an accident were relevant to whether appellant consumed alcohol prior to accident and not unduly prejudicial); *see also Kirsch*, 306 S.W.3d at 745 (unextrapolated BAC test results based on a blood draw taken 80 minutes after the defendant's arrest were highly probative on the question of the defendant's intoxication); *Mechler,* 153 S.W.3d at 440 (unextrapolated intoxilyzer results based on test conducted 90 minutes after defendant was arrested for DWI were relevant to his intoxication at the time he was driving); *Stewart,* 129 S.W.3d at 96-97 (unextrapolated intoxilyzer test results based on test conducted approximately 80 minutes after defendant's arrest for DWI were probative of defendant's intoxication at time she was driving).

In addition, we conclude the State had a substantial need to have the test results admitted into evidence, particularly because the only witness who could have testified regarding Appellant's conduct before the accident, Donte Pierce, testified that due his injuries, he could not recall the details of what occurred on the morning in question, including whether Appellant smoked any marijuana or was driving before the accident, and Florez, who was the first witness to see Appellant after the accident, testified that Appellant did not appear to be intoxicated at the time. In light of this conflicting evidence and the lack of any eyewitnesses to the offense, the State's need for the jury to hear evidence of the test results was "great," as Appellant acknowledges.

Moreover, we conclude there was no danger that the jury would have been distracted by the admission of this evidence, because as in *Gigliobianco*, the test results related to the main issue whether Appellant was intoxicated at the time of the accident. In addition, given the

importance of this evidence to the State's case, the trial court could have reasonably concluded that the time spent on the admission of the evidence did not consume an inordinate amount of time or result in the admission of cumulative evidence.

Most importantly, although Dr. Johnson provide a detailed description of the effects combining THC, alprazolam, and alcohol would have on an individual, he also testified that he could not perform a retrograde analysis on the test results and that he therefore could not provide the jury with an exact estimate of how much THC or alprazolam Appellant had in his system at the time of the accident. Dr. Johnson also did not suggest to the jury that the test results themselves were conclusive proof of the defendant's intoxication. The trial court therefore could have reasonably concluded that the jury was not misled on how the test results should be utilized and that no undue danger existed that the jury would misuse or be misled by the evidence.

Accordingly, we conclude the trial court could have reasonably determined that the probative value of Appellant's blood tests results were not substantially outweighed by the countervailing factors specified in Rule 403, and that the trial court did not abuse its discretion in admitting the evidence. Issue Nine is overruled.

### The Evidence was Sufficient to Support Appellant's Conviction for Intoxication Assault

In Issue Two, Appellant contends the evidence was insufficient to support his conviction for intoxication assault, asserting that the State failed to present evidence from which a rational jury could have found that he was intoxicated at the time of the accident or that his alleged intoxication caused the accident. We disagree.

### *Standard of Review*

14

We review sufficiency complaints under the legal-sufficiency standard enunciated in *Jackson v. Virginia.  See Fernandez v. State*, 479 S.W.3d 835, 837 (Tex.Crim.App. 2016); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).  The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.  The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).  It is the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781).  When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; s*ee also Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.  If a rational fact finder could have found the defendant guilty, we will not disturb the verdict on appeal. *Fernandez*, 479 S.W.3d at 838; *see also Temple v. State,* 390 S.W.3d 341, 363 (Tex.Crim.App. 2013) (affirming judgment where evidence was legally sufficient to support a conviction).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs,* 434 S.W.3d at 170; *Carrizales v. State,* 414 S.W.3d 737, 742 n.20 (Tex.Crim.App. 2013) (citing *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007)).  Each fact need not point directly and independently to

15

the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170; *Hooper,* 214 S.W.3d at 13.

The elements of the offense of intoxication assault are that a person operates a motor vehicle in a public place, is intoxicated, and by reason of that intoxication causes serious bodily injury to another by accident or mistake. TEX. PENAL CODE ANN. § 49.07 (West 2011); *see also Ex parte Watson,* 306 S.W.3d 259, 265 (Tex. Crim. App. 2009) (discussing elements of the offense). Appellant does not deny that he was operating the Jeep Cherokee in a public place at the time of the accident. The only issue is whether the evidence was sufficient to allow a rational jury to conclude that (1) Appellant was intoxicated at the time of the accident, and (2) that his intoxication was the cause of the accident and Pierce's consequent injuries.[7] We examine each element separately.

### The Evidence Supported a Finding of Intoxication

The term "intoxicated " is defined by statute as either: (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (2) having a blood alcohol concentration level of 0.08% or more. TEX. PENAL CODE ANN. § 49.01(2)(A, B) (West 2011). These two definitions of intoxicated are

[7] Appellant claims the State failed to present sufficient evidence that Pierce's injuries resulted from the accident, contending that his injuries—and his brain injuries in particular—may have resulted from Pierce drinking too much at the party prior to the accident. The evidence is undisputed, however, that Pierce suffered substantial bodily injuries as the result of the accident. The investigating officers found Pierce's injured body at the scene of the accident and determined that he had been ejected from the vehicle and had been "airborne" until he landed 117 feet from the point he was ejected. The investigating officers believed Pierce was so badly injured that they called for medical evacuation by helicopter. The State presented evidence that Pierce was hospitalized for a week after the accident, with swelling in his brain and cuts throughout his body. Moreover, Appellant never argued at trial that Pierce had not been injured in the accident, or that his injuries were caused by his ingestion of alcohol. To the contrary, Appellant's trial attorney expressly stated that he did not intend to introduce any evidence of the levels of alcohol or other intoxicants found in Pierce's body following the accident, thereby indicating that he did not intend to make Pierce's intoxication an issue at the trial for any purpose.

referred to as the "impairment" theory and the "per se" theory, respectively. *Kirsch,* 306 S.W.3d at 743.

The jury was instructed that it could find that Appellant was intoxicated under either statutory theory of intoxication, and his conviction will therefore be upheld as long as sufficient evidence was presented to prove either of the alleged theories. *See Bagheri v. State,* 119 S.W.3d 755, 761 n.5 (Tex.Crim.App. 2003) (the definitions contained in Section 49.01 set forth alternate means by which the State may prove intoxication); *see also Kirsch*, 306 S.W.3d at 743 (the two Penal Code definitions of intoxication are not mutually exclusive, and as long as there is evidence that would support both definitions, both theories are submitted to the jury); *Lerma v. State,* No. 13-13-00369-CR, 2015 WL 1869444, at *5 (Tex.App. – Corpus Christi April 23, 2015, pet. ref'd) (mem. op., not designated for publication) (jury was authorized to convict if it found that defendant was intoxicated under either the "impairment" or "per se" definitions in the statute).

Appellant contends the State failed to present any "direct evidence" that his BAC was at 0.08% or more at the time of the accident to support a conviction on a "per se" theory. In particular, Appellant points out that his test results only placed his BAC level at 0.07%, and that the State was unable to provide any retrograde extrapolation testimony that would have allowed the jury to convict him on the "per se" theory. We need not decide whether the evidence supported a finding of intoxication on a "per se" theory, however, since there was ample evidence to support a verdict on an "impairment" theory by showing Appellant did not have normal use of mental or physical faculties.

17

The State presented evidence not only that Appellant had a BAC level of 0.07% at the time his blood was tested, but also that he had substantial amounts of marijuana and alprazolam in his blood three hours after the accident. Dr. Johnson explained in detail both the individual and cumulative effects these substances would have on a person, which included drowsiness, dizziness, confusion, and sedation. Moreover, despite being unable to provide any retrograde extrapolation analysis, Dr. Johnson testified that in the absence of any evidence that Appellant ingested any alcohol after the accident, the lowest percentage of alcohol in his body at the time of the accident was 0.07%, which would have rendered the vast of the population unable to drive safely, despite Texas having set the "per se" level of intoxication at 0.08%.[8] In addition, Dr. Johnson also testified that even though the level of alprazolam Appellant had in his bloodstream at the time of the blood draw was at a therapeutic level, this would have affected his ability to drive. He also further opined that the vast majority of individuals with even half of Appellant's level of THC in their bloodstream would be "unsafe to drive[.]"

---

[8] Appellant acknowledges that Dr. Johnson estimated that Appellant's BAC level could have been anywhere from as low as 0.07% to as high as 0.11% at the time of the accident, based on the fact that an average male would typically eliminate about .04 of alcohol from his body over the three-hours that elapsed between the time of the accident and Appellant's blood draw. Appellant contends that to the extent that Dr. Johnson was attempting to establish that his BAC was above the legal limit of 0.08%, his testimony amounted to pure "speculation," because he could not perform an appropriate retrograde extrapolation analysis. Appellant did not challenge Dr. Johnson's estimate at trial as being scientifically unsound, nor does he argue on appeal that Dr. Johnson should not have been permitted to provide this estimate at trial. Consequently, we do not address the admissibility of Dr. Johnson's testimony itself. Instead, our review is limited to determining whether the evidence, as presented to the jury, was sufficient to support a finding of guilt. *See generally Moff v. State,* 131 S.W.3d 485, 489–90 (Tex.Crim.App. 2004) (distinguishing between challenges to the admission of evidence and the sufficiency of the evidence); *see also Thurman v. State,* No. 04-13-00463-CR, 2014 WL 1390490, at *1-3 (Tex.App. – San Antonio April 9, 2014, no pet.) (mem. op., not designated for publication) (because defendant did not challenge the admissibly of the State's retrograde extrapolation testimony at trial, court of appeals only considered whether the State presented sufficient evidence to uphold the defendant's DWI conviction); *Killian v. State,* 2002 WL 1938650, at *7 (Tex.App. – El Paso Aug. 22, 2002, pet. ref'd) (not designated for publication) (defendant's failure to object to expert witness's retrograde extrapolation testimony waived issue of admissibility of evidence on appeal).

18

More importantly, Dr. Johnson testified concerning the synergistic effects of taking all three of these substances would have on a person's physical and mental faculties. Dr. Johnson explained that taking two or more drugs in combination, such as alcohol and alprazolam which have the same negative side effects, multiplies those negative effects.[9] He also explained that alcohol "increases the negative side effects of THC," so that the user may become even more tired and confused. He expressed his opinion that given the levels and the combination of substances Appellant had in his bloodstream, it "would have made it unsafe for him to drive," and would have rendered him "intoxicated."[10]

In addition, the evidence indicated that no witnesses, including Florez, observed Appellant drinking or taking any narcotics after the accident. Therefore, the test results were highly probative whether Appellant was intoxicated at the time of the accident. *See Stewart,* 129 S.W.3d at 96 (where there was no evidence that defendant consumed alcohol after driving, her breath test results, although inconclusive, tended to make it "more probable" that defendant was intoxicated at the time she drove).

We recognize that unextrapolated test results are not conclusive proof of a defendant's intoxication at the time of an accident, and the State is required to come forward with "other evidence in the record that would support an inference that the defendant was intoxicated at the time of driving as well as at the time of taking the test." *Kirsch*, 306 S.W.3d at 745; *see also*

---

[9] The court instructed the jury on the synergistic effects of narcotics and alcohol. Such instructions are deemed a proper application of the law to the facts of the case when the evidence demonstrates the defendant ingested multiple substances prior to driving. *See Gray v. State,* 152 S.W.3d 125, 128, 133-34 (Tex.Crim.App. 2004).

[10] Appellant appears to contend that many, if not all, of Dr. Johnson's conclusions lacked a sufficient scientific foundation, and therefore should not have been admitted at trial. Appellant never objected to Dr. Johnson's testimony on this basis at trial, however, and we therefore decline to address these challenges on appeal. *See Esparza*, 413 S.W.3d at 86-87 (defendant waived objection to admissibility of scientific evidence by failing to object to its scientific reliability at trial).

19

*Kuciemba,* 310 S.W.3d at 462; *Stewart,* 129 S.W.3d at 97 (test results are but one piece "in the evidentiary puzzle," and other evidence must be presented from which a jury could infer that a defendant was intoxicated at the time of an accident in order to complete the puzzle).

In determining whether there is sufficient "other evidence" in the record to support a finding of intoxication, a reviewing court may look to a variety of factors, such as whether the defendant admitted to consuming alcohol or other intoxicating substances prior to driving; whether the defendant appeared intoxicated at the time of his arrest, and whether the nature of the accident suggested that the defendant was intoxicated. *See, e.g., Crenshaw v. State,* 378 S.W.3d 460, 467-68 (Tex.Crim.App. 2012) (evidence was sufficient to support a finding of intoxication under an impairment theory where the defendant's BAC level was 0.07% at time of blood draw, which together with other evidence of the defendant's intoxication, including his appearance at the time of his arrest and his admission that he drank and smoked marijuana prior to driving, made it "more probable that Appellant was subjectively impaired at the time he was driving, thereby supporting the theory alleged in the information and applied to the facts in the charging instrument").[11]

In the present case, the State presented ample "other evidence" from which the jury could have reasonably inferred that Appellant was intoxicated at the time of the accident. The State presented undisputed evidence that Appellant had been at a party prior to the accident and that

---

[11] *See also Aldrich v. State,* 296 S.W.3d 225, 230-31 (Tex.App. – Fort Worth 2009, pet. ref'd) (evidence was sufficient to support conviction were blood specimen taken more than two hours after accident showed a BAC of 0.07%, and where there was ample other evidence to support the conviction, including the defendant's testimony that he had consumed three twelve-ounce beers sometime prior to the accident, and numerous witnesses testified at trial that the accident occurred at a well-lit and clearly-marked crosswalk); *Blanchard v. State,* No. 05-05-01194-CR, 2006 WL 2440777, at *3 (Tex.App. – Dallas Aug. 24, 2006, no pet.) (not designated for publication) (the evidence was sufficient to sustain the defendant's DWI conviction, despite conflicting nature of urinalysis test results, where the defendant's test results detected a metabolite of marijuana in his system of an unknown quantity, and the defendant admitted that he had recently smoked marijuana two to three hours earlier).

Pierce had observed Appellant drinking alcohol at the party. In addition, although he did not recall whether Appellant had been smoking marijuana at the party, Pierce acknowledged that there was marijuana present at the party. Appellant also admitted to the investigating officers that he had been at a party prior to the accident, and that he was the "better off" of the three to drive, indicating that he recognized that he had some level of intoxication and impairment when leaving the party. Further, Appellant informed Florez when she met him after the accident that he had been falling asleep in the car being driven by the motorist who picked him up after the accident, which the jury could have inferred was the result of his intoxication, particularly in light of the sedative effects of tranquilizers as described by Dr. Johnson. And finally, the officers who investigated the accident, as well as the State's accident reconstructionist, testified that, based on their training and experience, they believed Appellant was intoxicated at the time of the accident because Appellant had been driving on a clear evening on a dry roadway, along a stretch of road with a "sweeping" gentle curve, which an alert, sober driver would have been able to easily navigate. Although this "other evidence" was virtually all circumstantial, an intoxication finding may be supported entirely by circumstantial evidence. *See Kuciemba,* 310 S.W.3d at 462.

Appellant points to what he believes is conflicting evidence in the record, including the fact that the investigating officers did not testify that they reached any conclusions whether Appellant appeared to be intoxicated when they spoke to him after the accident, and Florez's testimony that she did not perceive Appellant to be intoxicated at that time. Conflicting evidence, however, does not render the jury's verdict insufficient. At most, it creates a fact question for the jury to decide. The jury was entitled to resolve all conflicts in the evidence, and

21

it was free to assess Florez's credibility and the credibility of the other witnesses at trial, in determining whether Appellant was intoxicated at the time of the accident. *See Margraves v. State,* 34 S.W.3d 912, 919 (Tex.Crim.App. 2000) (jurors were free to believe or disbelieve any part or all of a witness's testimony and reconcile inconsistencies as they saw fit); *Williams v. State*, 307 S.W.3d 862, 867 (Tex.App. – Fort Worth 2010, no pet.) (defendant's testimony that he was ill, rather than intoxicated, which caused him to drive erratically, did not render the evidence factually insufficient to support the jury's verdict).

We reject Appellant's argument that our decision is controlled by the Court of Criminal Appeals' decision in *Leal v. State*, 338 S.W.2d 443, 444-46 (Tex.Crim.App. 1960), where, in reversing an intoxication murder case for lack of evidence, the Court found it significant that no witness testified that the defendant was intoxicated, virtually every witness at the scene testified that the defendant did not appear to be intoxicated, and the State's expert witness was unable to testify with any certainty from the urinalysis test results that the defendant would have been intoxicated at the time of the accident. *Id.* at 445. Unlike *Leal*, in the present case only one witness, Appellant's girlfriend, affirmatively testified that Appellant did not appear to be intoxicated. Further, unlike *Leal*, the State presented testimony from the investigating officers, as well as expert witnesses, that the circumstances surrounding the accident and nature of the accident itself suggested that Appellant was intoxicated. Moreover, unlike *Leal,* Appellant made incriminating statements to the investigating officers and to Florez after the accident.[12]

---

[12] The holding in *Leal* appears to be a bit of an anomaly. In the 56 years since it was decided, *Leal* has only been cited twice, and both of those cases distinguished *Leal* and upheld the jury's verdict involving deaths caused by intoxicated drivers. *See, e.g., Cotten v. State,* 406 S.W.2d 452, 454, 455 (Tex.Crim.App. 1966) (upholding defendant's conviction for murder where witnesses disagreed on whether the defendant appeared to be intoxicated following an accident, where defendant admitted to drinking before the accident, and where liquor bottles were found in the defendant's car at the time of the accident); *Kennemur v. State*, 280 S.W.3d 305, 315 (Tex.App. – Amarillo 2008, pet. ref'd) (upholding the defendant's conviction where the evidence demonstrated that the defendant

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have reasonably found beyond a reasonable doubt that Appellant was intoxicated at the time of the accident, thereby satisfying the first element of the offense. We therefore turn to whether the State presented sufficient evidence that Appellant's intoxication was the cause of the accident.

### *The Evidence Supported a Finding of Causation*

Under the Texas Penal Code, "[a] person is criminally responsible" for a particular result "if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (West 2011); *Garcia v. State,* 112 S.W.3d at 852-54. This "but for" causation must be established by providing evidence of a connection between an accused's conduct and the resulting harm. *See Robbins v. State,* 717 S.W.2d 348, 351 (Tex.Crim.App. 1986); *see also Glauser v. State,* 66 S.W.3d 307, 313 (Tex.App. – Houston [1st Dist.] 2000, pet. ref'd) (in an intoxication manslaughter case, the State is required to prove not only that the defendant was intoxicated, but that there was a causal connection between the defendant's intoxication and the death of the victim).

When concurrent causes are present, the "but for" requirement is satisfied when either the accused's conduct is sufficient by itself to have caused the harm, or the accused's conduct coupled with another cause is sufficient to have caused the harm. *Bell v. State,* 169 S.W.3d 384, 395 (Tex.App. – Fort Worth 2005, pet. ref'd) (citing *Robbins v. State*, 717 S.W.2d 348, 351

had been at a bar drinking prior to the accident, had been driving in a reckless manner, smelled of alcohol, and had a BAC of 0.098% hours after the accident).

23

(Tex. Crim. App. 1986)). Thus, as we have previously recognized, the State is not required to prove that intoxication was the *sole* cause of the accident. *Carrillo v. State,* No. 08-01-00471-CR, 2003 WL 1889943, at *8 (Tex.App. – El Paso April 17, 2003, pet. ref'd) (not designated for publication). Whether a causal connection exists between a defendant's intoxication and the cause of an accident is a question of fact for the jury to decide. *See Hardie v. State,* 588 S.W.2d 936, 939 (Tex.Crim.App. 1979).

Appellant contends the State did not meet its burden of proving "but for" causation because no witnesses testified at trial concerning the manner in which Appellant was operating the Jeep prior to or at the time of the accident, and that the only possible witness to the event was Pierce, who testified that he could not recall how Appellant was driving, due to the injuries he sustained in the accident. The State, however, was not required to present any "direct" evidence of the manner in which Appellant was driving his vehicle prior to the accident in order to establish that his intoxication was the cause of the accident. *See Mitchell v. State,* 419 S.W.3d 655, 663-64 (Tex.App. – San Antonio 2013, pet. ref'd) (rejecting defendant's argument that evidence was insufficient to support conviction for intoxication manslaughter were there were no witnesses to the accident or the manner in which defendant was operating his vehicle at the time of the accident, because the State's evidence otherwise established that defendant was intoxicated when he struck a pedestrian who was walking on the side of the road). To the contrary, circumstantial evidence may be used to establish a causal connection between a defendant's intoxication and the cause of an accident. *See*, *e.g., Garcia,* 112 S.W.3d at 852-54; *see also Killian v. State*, No. 08-01-00032-CR, 2002 WL 1939156, at *5 (Tex.App. – El Paso Aug. 14, 2002, pet. ref'd) (not designated for publication) (circumstantial evidence was sufficient

24

to provide a causal connection between the intoxication and the victim's death, where the evidence established that the defendant, who was clearly intoxicated, ran a red light causing the accident).

We have already determined there was sufficient evidence from which the jury could have inferred that Appellant was intoxicated at the time of the accident. Further, the investigating officers and the State's accident reconstruction expert testified that Appellant lost control of the Jeep on a curve that was not considered dangerous and could have been negotiated easily by an "alert and sober" driver.[13] We conclude this evidence was sufficient to show causation. *See, e.g., Glauser,* 66 S.W.3d at 313 (finding sufficient evidence to support finding that defendant's intoxication was the cause of an accident, where, among other things, accident occurred in a well-lit area with no visible obstructions, and the investigating officer expressed his opinion that a driver in full command of his mental and physical faculties driving at the speed limit would have been able to stop and avoid hitting the victim's disabled vehicle); *Garcia,* 112 S.W.3d at 852-54 (finding sufficient evidence that the defendant's intoxication caused the accident that claimed the victim's life, where State's accident reconstructionist expressed his expert opinion that the accident would not have occurred but for the defendant's intoxication).

Appellant finds it significant that he presented an alternate theory that the Jeep he was driving may have had defective tires that caused the Jeep to "spin out" of control on at least one prior occasion. Appellant further points out that one of the tires found in the wreckage appeared

---

[13] Appellant presented testimony from a Grand Prairie Police Officer indicating that there were six or seven other accidents in a six-month period on the same stretch of highway. However, on cross-examination, the officer explained that none of those accidents were single-car accidents where the driver had failed to negotiate the curve, but rather all involved multiple-car collisions that arose from unsafe lane changes or other "fender-bender" type situations.

to have a large "gash" or "hole" in it following the accident, which would support his theory that the tire blew out prior to the accident. The State, on the other hand, presented the expert witness testimony of an accident reconstruction expert, who testified that the gash in the tire was caused by the accident itself when the Jeep's tires hit the curb due to "operator error," and that the accident was not caused by any pre-existing tire or other mechanical defect.[14]

At most, Appellant's alternate theory raised a fact issue concerning the cause of the accident, which was for the jury to resolve. In fact, Appellant's own expert witness refused to conclude that the condition of the tire was the sole cause of the accident, and instead conceded that he did not "think anybody can give an opinion as to why [the Jeep] started skidding in the first place." Consequently, the jury was free to reject the defendant's alternative explanation for the accident. *See Cotten v. State*, 406 S.W.2d 452, 454 (Tex.Crim.App. 1966) (jury was free to reject Appellant's testimony that he struck an oncoming vehicle, not because he was intoxicated, but because his car had "slick" tires, and suffered from mechanical issues that caused the car to weave and pull); *Wooten v. State,* 267 S.W.3d 289, 295-97 (Tex.App. – Houston [14th Dist.] 2008, pet. ref'd) (jury was free to reject defendant's explanation that he swerved to avoid hitting a motorcycle, and to instead believe the State's theory that the defendant's intoxication was the cause of the accident in which he struck and killed three pedestrians).

---

[14] Appellant is critical of Lovett's testimony in several respects, claiming that Lovett did not adequately explain how the defect could "possibly have been the result of the crash," or why he believed that the accident did not occur as the result of a tire blowout. This, however, is not accurate. Lovett explained that when a tire blows out, it leaves a "distinctive mark" on the pavement, and that no such mark appeared in the photographs taken at the accident scene. In addition, he testified that based on his inspection of the tire, there was no evidence that the rim of the tire came into contact with the road, as would be expected if the tire had blown out. Lovett further explained that, although there was some wear on the tire, there was still "serviceable tread life" left, and that there was no side wall damage to the tires, as one would expect if the tire had blown out.

26

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to show Appellant's intoxication was the cause of the accident. Issue Two is overruled.

**The State did not Engage in Improper Jury Argument**

In Issue Eleven, Appellant contends the trial court erred in allowing the State to argue in closing that Appellant had consumed alprazolam and marijuana during the four-hour period between the time he left his mother's residence and the time of the accident. Appellant asserts the argument was not a proper summary of the facts presented at trial and instead injected new facts into evidence that were not supported by the record. The State contends the prosecutor's argument was based on a reasonable deduction from the evidence. We agree with the State.

*Standard of Review and Improper Jury Argument*

Proper jury argument includes four areas: (1) summary of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) answers to opposing counsel's arguments; and (4) pleas for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App. 2000). A prosecuting attorney is permitted in his argument to draw from the facts in evidence all inferences which are reasonable, fair and legitimate, and is allowed wide latitude in drawing inferences from the evidence as long as the inferences drawn are reasonable and offered in good faith. *Cantu v. State,* 939 S.W.2d 627, 633 (Tex.Crim.App. 1997). However, the prosecutor may not use the jury argument to get before the jury, either directly or indirectly, evidence which is outside the record. *Borjan v. State,* 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (citing *Jordan v. State,* 646 S.W.2d 946, 948 (Tex.Crim.App. 1983)).

27

In order to constitute reversible error, a jury argument must have been manifestly improper or must have injected new, harmful facts into the proceedings. *Jackson*, 17 S.W.3d at 673-74; *see also Borjan,* 787 S.W.2d at 57 (an improper jury argument constitutes reversible error when, in light of the record as a whole, it is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceedings). A trial court's erroneous overruling of a defendant's objection to improper jury argument is a non-constitutional error reviewed under the standard of TEX. R. APP. P. 44.2(b). *Maxwell v. State,* 253 S.W.3d 309, 318 (Tex.App. – Fort Worth 2008, pet. ref'd).

### *Analysis*

During closing argument, defense counsel argued there was insufficient evidence that Appellant was intoxicated at the time of the accident, pointing out that his blood-alcohol level at the time of the blood draw was 0.07, which was below the legal limit, and that the evidence was inconclusive regarding whether he had sufficient amounts of marijuana and tranquilizers in his system to impair the normal use of his faculties. In particular, defense counsel argued that the State had failed to present a sufficient timeline of when he had ingested any of the substances in question, or the levels of any of the substances in his system at the time of the accident, in order to prove beyond a reasonable doubt that he was intoxicated at the time of the accident. In response, the State pointed out that Florez had testified that she had been with Appellant all day prior to the accident, and that she did not observe him ingesting any alcohol or narcotics before he left for the party at 11 p.m. the night before the accident. The State therefore asked the jury to consider what happened during the four-hour period of time between the time he left for the party at 11 p.m. and the time the accident occurred at approximately 2:44 a.m. the next morning,

28

submitting that Appellant had been "drinking E&J, like [Pierce] told you, he's smoking marijuana, and he's popping Xanax pills."[15] Defense counsel immediately objected that those facts were not "in evidence," but the trial court overruled that objection.

Appellant contends there was no evidence presented at trial to support the prosecutor's statements. In particular, Appellant points out that although Pierce testified that he saw Appellant drink alcohol at the party, he did not recall seeing him smoke marijuana. Appellant further points out that no one testified that they observed Appellant take any tranquilizers prior to the accident. Appellant contends that the prosecutor therefore improperly used her closing argument to get evidence before the jury that was "outside the record and prejudicial to the accused."[16]

Initially, we note that the prosecutor never stated or implied that any witnesses had observed Appellant ingest the drugs, and instead, as she clarified to the jury following Appellant's objection, her argument was based primarily on the fact that Appellant's test results established that Appellant had both marijuana and alprazolam in his blood approximately three hours after the accident. Therefore, the fact that no witnesses directly observed Appellant ingest these substances is not relevant to our analysis.

Instead, we conclude that the prosecutor's statement was a reasonable deduction from the evidence presented at trial. In particular, we note that Florez testified that she had been with

---

[15] Xanax is a trade name for the generic tranquilizer, alprazolam.

[16] Appellant also argues that this was improper evidence of "extraneous offenses," but as the State points out, whether Appellant was intoxicated by virtue of having both alprazolam and marijuana in his system was an element of the offense as charged. *See Manning,* 114 S.W.3d at 927 (where indictment charged that defendant committed manslaughter by recklessly consuming a controlled substance prior to a fatal accident, the evidence of a cocaine metabolite in the defendant's bloodstream "was not an extraneous offense—it was evidence of the charged offense").

29

Appellant the entire day before he left for the party at 11 p.m., and that she did not see him ingest any narcotics at that time. Further, Florez also testified that she did not observe Appellant take any narcotics after he arrived at the residence following the accident. When considering the blood test results in conjunction with Florez's testimony, the prosecutor was able to make a reasonable deduction from this evidence that Appellant consumed the narcotics found in his bloodstream in the intervening period of time between leaving the residence and the time of the accident.

Further, as the prosecutor pointed out, Dr. Johnson testified at trial that the active THC metabolite in marijuana, which was found in Appellant's bloodstream, is only detectable for a six-hour period of time. Since Florez did not observe Appellant smoke any marijuana before he left for the party or after he arrived at the residence following the accident, Dr. Johnson's testimony supported a reasonable inference that the marijuana was ingested sometime in that intervening four-hour period.

We therefore conclude that the prosecutor's argument was a reasonable deduction from the evidence and did not inject new facts or evidence into the record. *Berry v. State,* 233 S.W.3d 847, 860 (Tex.Crim.App. 2007) (prosecutor's argument, although "aggressive" in nature, was a reasonable deduction from the evidence). Accordingly, we overrule Issue Eleven.

### The Evidence was Sufficient to Support Appellant's Conviction for Failure to Stop and Render Aid

In Issue Three, Appellant contends the evidence was insufficient to support his conviction for failure to stop and render aid, arguing primarily that the statute making his conduct a crime did not apply to the facts of his case. We disagree.

### *Applicable Law*

30

Section 550.021 of the Texas Transportation Code provides, among other things, that the "operator of a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person shall: . . . (3) immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and (4) remain at the scene of the accident until the operator complies with the requirements of Section 550.023." TEX. TRANSP. CODE ANN. § 550.021 (West Supp. 2016). In turn, Section 550.023 provides that the operator of the vehicle involved in any such accident must, among other things, give his name, address, registration and insurance information "to any person injured or the operator or occupant of or person attending a vehicle involved in the collision[,]" and "provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation." TEX. TRANSP. CODE ANN. § 550.023 (West 2011).

The indictment alleged Appellant violated Section 550.021 when he intentionally or knowingly left the scene of an accident involving serious bodily injury "without giving his name and address to any person, and without rendering reasonable assistance to Donte Pierce when it was then apparent that Donte Pierce was in need of medical treatment."

**Analysis**

Although Appellant frames his argument in terms of sufficiency of the evidence, his argument centers on his belief that the provisions in the Transportation Code (hereinafter the "accident statutes") did not apply to him in light of his pre-existing friendship with Kipasa. Appellant's argument appears to rely on the holding in *State v. Stevenson*, 958 S.W.2d 824

(Tex.Crim.App. 1997). In that case, the defendant driver was involved in a single-car accident in which his wife was injured. The defendant remained at the scene, and spoke with an officer who arrived at the scene to conduct an accident investigation. In response to the officer's questions, the defendant falsely told the officer that his wife had been driving. At some point in their conversation, the officer noted that the defendant smelled of alcohol and placed him under arrest for driving while intoxicated.

The defendant sought to have his statements to the investigating officer suppressed as the product of a custodial interrogation. Defendant argued that because the accident statutes required him to remain at the scene and subjected him to criminal penalties if he did not, any questioning that occurred while he remained at the scene was a custodial interrogation, thereby invoking the protections of *Miranda*. The Court rejected this argument for two reasons. First, the Court noted that the accident statutes only required the driver to do two things: (1) provide contact information to someone at the scene (the reporting provision); and (2) render reasonable assistance to any injured persons. *Id*. at 827. The Court found it significant that the accident statutes did not require a driver to give any information to law enforcement officials, and therefore imposed no duty on the driver to answer the officer's questions at the scene of the accident. *Id.*

Although the Court could have ended its analysis there, it also expressed its opinion that the reporting provisions in the accident statutes did not, under the circumstances of that particular case, require the defendant to remain at the scene of the accident. In this regard, the Court noted that the defendant was married to his injured passenger, and that she would have already been privy to the information required to be exchanged by the statutes. *Id*. The Court

concluded that the statute's reporting provision did not apply when "all the injured parties already possessed the requisite information." *Id.* Although the Court clearly recognized the accident statutes also required a defendant to stop and render aid to an injured party, the Court did not discuss whether the defendant would have been obligated to stay and render aid to his injured wife. *Id.* at 826 n.2 (referring to the stop and render aid provision in the accident statutes). In any event, the Court concluded that the accident statutes imposed no duty on the defendant "to remain at the scene under the circumstances of this particular accident," and that he was instead only required to remain at the scene pursuant to an "investigative stop" being conducted by the officer at the scene, which did not invoke the protections of Miranda. *Id*. at 828. As such, the Court concluded that the accident statutes had no bearing on whether the defendant's Miranda rights were violated. *Id.*

Appellant relies on *Stevenson* to argue that the accident statutes' requirements should not be applied to him, in light of his pre-existing relationship with Pierce, and that he was therefore under no duty to remain at the scene to either exchange information with Pierce or to render aid to him. In effect, Appellant believes that *Stevenson* barred his prosecution and conviction for this offense. We do not interpret *Stevenson* so broadly.

First, the Court in *Stevenson* did not address whether the State was barred from prosecuting the defendant for failing to comply with the accident statutes. Instead, the Court's sole focus was on whether the accident statutes had any bearing on the defendant's *Miranda* rights. Any language used by the Court to indicate that the accident statutes' reporting provision did not apply to drivers when "all the injured parties already possessed the requisite

33

information," must be applied in that context, *i.e.,* to cases involving whether a defendant's *Miranda* rights were invoked. *Id*. at 827.

Further, even if we were to apply that language to the question whether a defendant could be prosecuted, the defendant would still have to demonstrate that the injured party "possessed the requisite information," which includes not only the driver's name and address, but the driver's registration and insurance information as well. While a court might be able to presume that the wife of a defendant driver would have this information, we do not believe that a defendant driver would be entitled to this same presumption merely because the driver was in a pre-existing friendship with the injured party.

More importantly, the Court in *Stevenson* did not specifically address whether the stop and render aid provision of the accident statutes would apply to a case in which the injured party was related to or friends with the driver. In fact, it is unclear from the opinion whether the defendant's wife needed any such aid or if aid had already been provided to her. As such, there is nothing in the *Stevenson* opinion that would cause us to conclude that the Court intended to hold, as Appellant apparently contends, that a defendant driver is required by the accident statutes to remain at the scene to assist a total stranger, but is allowed to flee the scene if he has injured a family member or friend.

There is nothing in the statute that would lead us to this absurd conclusion. To the contrary, the plain language of the statute contemplates that an individual involved in an accident must remain at the scene to provide assistance to "any person injured in the accident," without any stated exceptions for family members or friends. TEX. TRANSP. CODE ANN. § 550.023. Thus, to construe the statute in the manner suggested by Appellant would not only lead to an

absurd result, but would contravene the Legislature's clear intent in serving the public interest by requiring all drivers to remain at the scene to assist "any person" they have injured. *See McCown v. State,* 192 S.W.3d 158, 162-63 (Tex.App. – Fort Worth 2006, pet. ref'd) (recognizing that accident statutes were adopted as a matter of "public interest"). This we decline to do. *See Stevenson,* 958 S.W.2d at 827 (if the language of a statute is unambiguous, we give effect to its plain meaning unless doing so would lead to absurd results).

Moreover, Appellant has not cited any cases, and we are aware of none, in which courts have cited *Stevenson* for the proposition that a driver may not be prosecuted under the accident statutes merely because of a pre-existing relationship with an injured party.[17] To the contrary, courts analyzing the sufficiency of evidence to support a defendant's conviction for failing to stop and render aid, focus only on the key elements of the offense, including whether the driver should have been aware that an injured party required medical assistance and whether the driver fulfilled that requirement. *See, e.g., Stewart v. State,* 70 S.W.3d 309, 312-13 (Tex.App. – Waco 2002, pet. ref'd) (concluding the evidence sufficient to uphold the defendant's conviction for failing to remain at the scene of a single-car accident when it should have been apparent to the driver that his passenger required medical assistance).

And finally, we note that the driver's knowledge that a party may have been injured in an accident may be inferred from the nature of the accident itself, and from the conduct of the driver after the accident. *Id.* (defendant's knowledge that passenger was injured could be inferred from

---

[17] Instead, *Stevenson* seems to have been cited almost exclusively in cases involving questions of when a defendant may be considered in custodial interrogation following a traffic accident or a traffic stop. The only mention of *Stevenson's* discussion of the accident statutes is found in the dissenting opinion of Justice Dauphinot in which she opined that a driver who left the scene of an accident after an ambulance had already been called and where a nurse was at the scene of the accident had done more to render reasonable assistance to an injured individual than the driver in *Stevenson* did. *McCown,* 192 S.W.3d at 166-67 (Dauphinot, J. dissenting). Justice Dauphinot concluded that although the driver in that case was properly convicted for leaving the scene of the accident under the applicable statutes, she believed that such a holding clearly conflicted with the "clear mandate in *Stevenson*." *Id.*

the fact that the witnesses observed defendant running from the scene, looking back at the scene of the accident while bystanders were yelling at him to stop); *McCown,* 192 S.W.3d at 162-64 (defendant's knowledge that others may have been hurt in the accident could be inferred from the evidence demonstrating that the accident involved a significant head-on collision with another driver, making it unreasonable to assume that the driver would not have known that an injury was possible). In the present case, there was sufficient evidence from which the jury could have reasonably inferred that Appellant was aware that Pierce required medical attention, in light of the severe nature of the accident, the fact that Appellant himself was injured, and the fact that he could not find Pierce in the wreckage, all of which would have suggested that Pierce had been thrown from the vehicle. Despite all this, Appellant left the scene of the accident and did not seek assistance for Pierce until he arrived at his mother's residence.

Therefore, regardless of whether Appellant was required to comply with the reporting provisions of the statute, the evidence presented clearly supported an inference that Appellant failed to comply with the provisions in the statute requiring him to render assistance to Pierce. Because the State charged Appellant was violating both provisions in the statute, it was required only to demonstrate that he violated one of those provisions. *See St. Clair v. State,* 26 S.W.3d 89, 97-99 (Tex.App. – Waco 2000, pet. ref'd) (where defendant was charged with violating both provisions in the Transportation Code, for failing to report and for failing to stop and render aid, the jury's verdict would stand where the evidence was sufficient to support a finding that he violated at least one provision in the statute). Because the State met that burden, Issue Three is overruled.

**The Trial Court's Erroneous Admission of Hearsay Evidence was Harmless**

36

In Issue Four, Appellant contends the trial court erred in admitting certain statements that a witness overheard Florez make to a friend, in which she repeated potentially incriminating statements that Appellant had made to Florez on the morning of the accident. We agree this evidence constituted inadmissible hearsay, but we find the admission of the evidence harmless.

## Standard of Review

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d); *see also Willover v. State,* 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). Hearsay is not admissible except as provided by statute or the rules of evidence. TEX. R. EVID. 802; *Willover*, 70 S.W.3d at 845 ("hearsay evidence is inadmissible unless if falls within one of the many exceptions" to the general rule). Whether an out-of-court statement is admissible under an exclusion or exception to the general hearsay rule is a matter within the trial court's discretion. *Zuliani* v. *State,* 97 S.W.3d 589, 595 (Tex.Crim.App. 2003). The trial court's decision will be reversed only if it is "outside the zone of reasonable disagreement." *Salazar v. State,* 38 S.W.3d 141, 151 (Tex.Crim.App. 2001); *see also Pena v. State,* 353 S.W.3d 797, 814 (Tex.Crim.App. 2011).

## Analysis

### The Testimony was Inadmissbile Hearsay

As the State was questioning Florez about the events following the accident, the prosecutor asked if Appellant had told her that he had been in a fight in order to explain his injuries following the accident, and if Appellant had asked her to tell law enforcement that she had been driving the Jeep at the time of the accident. Florez replied in the negative to both questions, and the prosecutor asked no additional questions about the matter.

37

Subsequently, the State asked Pierce's grandmother, Maude Woods, if she had overheard Florez tell a friend while they were visiting Pierce at the hospital in the days following the accident, that Appellant "wanted her to say that she was driving" on the night of the accident. Appellant objected, arguing that it was inadmissible hearsay. In response, the State contended that because Appellant had made the original statement, it was admissible as the admission of a party-opponent. The State also argued that it was submitting Woods' testimony to impeach Florez's earlier testimony in which she had denied that Appellant had asked her to say she was driving. The defense once again objected, asserting that it was improper for the State to attempt to impeach its own witness on that basis. The trial court overruled the objection, and allowed Appellant to make a "running objection" to the testimony. Woods thereafter testified that she had overheard Florez tell her friend that Appellant had asked her to tell law enforcement that she had been driving the Jeep when the accident occurred, and that Appellant had initially told Florez that he had been in a fight shortly after the accident occurred in order to explain his injuries.

Appellant correctly points out that Woods' testimony contained "double hearsay," involving not only the statements that Appellant allegedly made to Florez, but also the statements that Florez made to her friend, which Woods overheard. When double or multiple hearsay is involved, to be properly admissible, each level of hearsay must be analyzed separately and must fall under an exception. *See Crane v. State,* 786 S.W.2d 338, 354 (Tex.Crim.App. 1990); *Trussell v. State,* 585 S.W.2d 736, 738 (Tex.Crim.App. 1979); *see also Davis v. State,* 696 S.W.2d 494, 498 (Tex.App. – El Paso 1985, no pet.) (for the State to overcome a double hearsay objection, "each separate identifiable increment of hearsay must be distinctly justified under some recognized exception to the hearsay rule"); *see also* TEX. R. EVID. 805 ("[h]earsay

38

within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule").

Analyzing the first layer of hearsay, we agree with the State that Appellant's alleged statements to Florez, which were made following the accident, may be classified as admissions of a party-opponent and are excluded from the hearsay rule under Rule 801(e)(2)(A) of the Texas Rules of Evidence, which "plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay." *See Trevino v. State,* 991 S.W.2d 849, 853 (Tex.Crim.App. 1999); *see also* TEX. R. EVID. 613(a)(5) (excepting admissions of a party opponent under Rule 801(e)(2) from the application of its foundational requirements concerning prior inconsistent statements). Florez clearly could have testified concerning statements Appellant made to her after the accident because they were not hearsay. The State, however, has failed to address the second layer of hearsay—whether the statements that Florez made to her friend, which Woods overheard, constituted hearsay evidence, and if so, whether the statements fall within any exclusion or exception to the hearsay rule.

In analyzing this question, we note that the statements Florez made to her friend—advising her of potentially incriminating statements made by Appellant—were hearsay because they were an out-of-court statements offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d); *see also Hughes v. State,* 4 S.W.3d 1, 2-3, 6 (Tex.Crim.App. 1999) (CPS workers' testimony that defendant's wife described defendant's confession to them was inadmissible hearsay; although the confession itself would have been admissible as an admission of a party-opponent if the wife had provided the testimony, the wife's statement to the caseworkers was hearsay that did not come within any exception); *see also Robison v. State,* 35 S.W.3d 257, 261

39

(Tex.App. – Texarkana 2000, pet. ref'd) (trial court erred in admitting testimony of a police officer who testified that defendant's wife had informed him that the defendant had confessed to her, because the police officer had no firsthand knowledge of the defendant's confession, and his testimony was not independently admissible at trial under any exception to the hearsay rule). Therefore, we must analyze Florez's out-of-court statements to her friend to determine if they are independently admissible under any exclusion or exception to the hearsay rule.

While the State has failed to present any argument on this issue on appeal, the State argued at trial that Woods' testimony was admissible to "impeach" Florez's earlier testimony in which she denied that Appellant had made the two statements to her on the morning of the accident. *See Reyna v. State,* 168 S.W.3d 173, 178 (Tex.Crim.App. 2005) ("In order to have evidence admitted under a hearsay exception, the proponent of the evidence must specify which exception he is relying upon."). As Appellant points out, there are at least two Rules of Evidence that we must examine to determine whether the statement was admissible to "impeach" Florez.

First, Rule 801(e)(1) provides that a declarant-witness's prior statement is not considered hearsay if the declarant testifies and is subject to cross-examination about a prior inconsistent statement made by the declarant-witness. However, in a criminal case, this rule requires that the prior statement must have been given "under penalty of perjury at a trial, hearing, or other proceeding—except a grand jury proceeding—or in a deposition[.]" TEX. R. EVID. 801(e)(1)(A)(ii). As Appellant points out, Florez's prior statements, which were made to her friend at the hospital, were not given under penalty of perjury, and they do not fit within any of the scenarios listed in Rule 801. Therefore, we conclude that Rule 801(e)(1)(A)(ii) is inapplicable. *See Martinez-Salinas v. State*, No. 04-14-00565-CR, 2015 WL 6736795, at *4

40

(Tex.App. – San Antonio Nov. 4, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding that Rule 801(e)(1)(A)(ii) was inapplicable to statements made by a witness during an interview with the witness's employer and attorney, where those statements were not made under oath in any of the proceedings enumerated in the Rule).

Second, Rule 613 of the Texas Rules of Evidence provides a separate exception to the hearsay rule, allowing under certain circumstances the admission of extrinsic evidence of a witness's prior inconsistent statement to impeach the witness, even if the statement was unsworn. However, Rule 613 further provides that extrinsic evidence of such a statement is only admissible if the proponent of the evidence first examines the witness about the statement and only if the witness "fails to unequivocally admit making the statement." TEX. R. EVID. 613(a)(4). In particular, as a "foundation requirement," the Rule requires the proponent to tell the witness the contents of the statement, the time and place the statement was made, and the person to whom the witness made the statement. TEX. R. EVID. 613(a)(1)(A)(B)(C). Further, the Rule provides that the witness must be given the opportunity to explain or deny the prior inconsistent statement. TEX. R. EVID. 613(a)(3); *see Huff v. State,* 576 S.W.2d 645, 647 (Tex.Crim.App. 1979) (discussing proper predicate for impeachment by prior inconsistent statement); *see also McGary v. State,* 750 S.W.2d 782, 786 (Tex.Crim.App. 1988).

In the present case, the State failed to provide any such foundational requirements, and therefore we conclude that any extrinsic evidence of Florez's prior statements was not admissible under this exception. Because in response to Appellant's hearsay objections, the State only asserted that the statements were admissible as admissions of a party opponent and as impeachment, and because the State has not advanced any other basis for admission on appeal,

41

we restrict our review to only those two grounds as a basis for admission. *See Reyna,* 168 S.W.3d at 177 (requiring the proponent of the hearsay evidence to specify which exception he is relying on for admission). Accordingly, we conclude the trial court abused its discretion in admitting Woods' testimony at trial.

### *The Error was Harmless*

However, our analysis must not stop here. We must also conduct a harm analysis to determine whether the admission of Woods' testimony constitutes reversible error. In determining whether harm resulted from the erroneous admission of hearsay evidence at trial, we apply the standard for non-constitutional error found in TEX. R. APP. P. 44.2(b), which provides that a court must disregard any errors that do not affect the defendant's "substantial rights." *Hughes v. State,* 12 S.W.3d 166, 167-68 (Tex.App. – Fort Worth 2000, no pet.) (citing *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App. 1998) (op. on reh'g)); *see also Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App. 1998) (evaluating error in admission of hearsay testimony under the standard for non-constitutional error). A "substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict." *Hughes*, 12 S.W.3d at 168 (citing *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997)). We review the record as a whole in determining whether the admission of erroneously-admitted hearsay evidence had a substantial and injurious influence on the jury. *Id.*; *see also Davis* v. *State,* 268 S.W.3d 683, 709 (Tex.App. – Fort Worth 2008, pet. ref'd) (when evaluating the harm caused by erroneously admitted hearsay, a reviewing court "must deem the error harmless if, after reviewing the entire record, the court is reasonably assured the error did not influence the jury's verdict or had but a slight effect").

42

Appellant contends that the admission of Woods' testimony substantially affected the jury's verdict, in part because it allowed Woods to testify about how she felt when she overheard Florez make those statements, which, in turn, Appellant believes unduly aroused the sympathy of the jury. The record, however, does not support this assertion. To the contrary, when the prosecutor asked Woods how she felt when she overheard Florez's comment that Appellant had told her that he had been in a "fight" following the accident, Woods stated only that she did not believe that his statement "correspond[ed] with what happened, with him leaving the accident." The State's attorney then asked Woods how that made her feel, but Woods never directly answered that question. Instead, Woods testified that she did not understand how Appellant could have left his friend (Pierce) behind at the scene of the accident. Woods' comment on Appellant's failure to remain at the scene was a non sequitur, as it had nothing to do with whether Appellant had lied to Florez after the accident. Consequently, while the admission of the hearsay evidence could have potentially opened the door to inflammatory comments from Woods that could have aroused the jury's sympathies, Woods never made any such comments in response to that evidence.

Appellant argues that the admission of the hearsay statements significantly damaged his case, because the hearsay statements served to impeach Florez's earlier testimony, which in turn may have caused the jury to doubt her credibility. Appellant points out that Florez's testimony was critical to his defense, since Florez was virtually the only witness at trial who testified that she did not believe that Appellant was intoxicated following the accident. Appellant therefore contends that the jury's guilty verdict finding on intoxication manslaughter "only makes sense" if the jury chose to disbelieve Florez's testimony.

43

The State, however, never focused on the conflict between the testimony given by Woods and the testimony given by Florez, and did not argue to the jury that it should disbelieve Florez's testimony on that basis. Instead, in its closing argument, the State focused on the overwhelming evidence it presented to establish that Appellant was in fact intoxicated at the time of the accident, including his toxicology results, and that the accident was not caused by the condition of the vehicle, the road, or the intersection.

Moreover, because the evidence of Appellant's guilt was overwhelming, the admission of the hearsay statements, although potentially incriminating, had only a minor influence, if any, on the jury's verdict. *See Hughes,* 12 S.W.3d at 168 (concluding that the admission of hearsay statements pertaining to the defendant's confession did not have a substantial and injurious influence on the jury's verdict in light of the overwhelming evidence of the defendant's guilt independent of those hearsay statements). We therefore conclude that the trial court's erroneous admission of Woods' hearsay statements did not affect a substantial right of Appellant. Accordingly, Issue Four is overruled.

## The State Asked its Expert a Proper Hypothetical Question

In Issue Six, Appellant contends the trial court erred in allowing the State to ask its expert witness an improper hypothetical question regarding whether the Jeep may have spun out of control when operated by a driver under the influence of marijuana, contending that the hypothetical improperly assumed facts not in evidence. We agree with the State that the hypothetical properly tracked the evidence presented at trial.

### *Standard of Review*

The trial court's decision in determining whether to allow an expert witness to provide a response to a hypothetical question is reviewed for an abuse of discretion. *Tillman,* 354 S.W.3d at 442. A reviewing court will not reverse the trial court's determination to admit or deny such evidence unless it is outside the zone of reasonable disagreement. *Id*.

### *Analysis*

An expert witness may offer an opinion based solely on hypothetical questions posed at trial. *Tillman,* 354 S.W.3d at 439 (citing *Jordan v. State,* 928 S.W.2d 550, 556 n.8 (Tex.Crim.App. 1996)). However, a hypothetical question posed to an expert witness must be based on facts established by the evidence at trial. *McBride v. State,* 862 S.W.2d 600, 609 (Tex.Crim.App. 1993); *see also Pyles v. State,* 755 S.W.2d 98, 118 (Tex.Crim.App. 1988) (citing *Holloway v. State,* 613 S.W.2d 497 (Tex.Crim.App. 1981)) (the assumptions of the hypothetical must be based on facts within the personal knowledge of the witness, or facts assumed from common or judicial knowledge, or facts supported by evidence); *Tillman*, 354 S.W.3d at 440 (expert witness testimony must be "sufficiently linked to the facts of the case"). If a hypothetical question fails to echo any particular "event" that "occurred in that particular case," it would result in expert testimony that is not relevant for purposes of Rule 702 because it does not "fit" the facts of the case and therefore cannot help the jury. *Blasdell v. State,* 384 S.W.3d 824, 830 (Tex.Crim.App. 2012); *see also* TEX. R. EVID. 702 (an expert witness testimony must "help the trier of fact to understand the evidence or to determine a fact in issue").

At trial, both Florez and Pierce testified about two prior occasions when they were driving Florez's Jeep and it allegedly spun out of control, in an apparent attempt to support Appellant's theory that the accident was caused by events other than his intoxication. Pierce

45

testified, without objection, that he and Appellant had smoked marijuana on one of the days that the Jeep had spun out of control. The State subsequently asked its expert witness, accident reconstructionist Timothy Lovett, if he believed it was possible that the Jeep may have skidded on those prior occasions because the road was wet. The following dialogue then occurred:

Lovett:     Just on its own?

Prosecutor:   Just on its own.

Lovett:     No.

Prosecutor:   And if there was testimony that the person operating a vehicle had previously smoked marijuana prior to driving this vehicle … could the vehicle have just spun out on its own?

Defense counsel objected that the question assumed facts not in evidence. The State responded that the facts were in evidence based on Pierce's prior testimony, apparently referring to Pierce's testimony that he and Appellant had smoked marijuana prior to driving the Jeep when it had spun out of control. The trial court overruled the objection, and allowed Lovett to testify that: "In the hands of a sober driver, this vehicle has the ability to stay in track and negotiate turns," and "[o]n dry pavement, in the hands of a sober, non-smoked (sic) person, [the Jeep] should go straight. It's not going to just willy nilly on its own flip around."

Appellant argues there was no evidence that the driver of the Jeep on the prior occasion when the Jeep spun out of control had smoked marijuana, and therefore no factual basis for the hypothetical question.[18] Appellant further contends that the prosecutor's hypothetical question

---

[18] Although his argument is not entirely clear, Appellant also apparently contends the State failed to establish that Pierce's testimony was "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." In support, Appellant cites *Ramirez v. State*, 815 S.W.2d 636, 651 (Tex.Crim.App. 1991), in which the court held it was improper for a party to cross-examine an expert witness about scientific treatises not introduced into evidence without a showing that they were "recognized authorities" in the field. *Id.* at 652. In the present case, Lovett's testimony raised no such concerns.

only served as a "subterfuge" to get inadmissible evidence of Appellant's prior marijuana use before the jury.  We disagree.

At trial, Pierce testified that he and Appellant were traveling in the Jeep on a prior occasion when it spun out of control and admitted, without objection, that they had been smoking marijuana that day.  Appellant argues that this did not show that the driver of the vehicle was smoking marijuana.  In his testimony, however, Pierce indicated that only two individuals were in the car—Appellant and himself—and that both of them had smoked marijuana.  Since one of them had to be driving the vehicle, the only logical conclusion from Pierce's testimony is that the driver of the vehicle—whether it was Appellant or Pierce—had smoked marijuana the day the car spun out of control.  Further, the evidence presented at trial also established that Appellant had marijuana in his bloodstream at the time he was driving the Jeep on the morning of the accident.[19]

The prosecutor's hypothetical question asked whether the use of marijuana could have affected the operation of the Jeep by causing it to spin out of control.  The question was therefore based on facts already in evidence, and did not, as claimed by Appellant, simply serve as a subterfuge for getting evidence of his prior marijuana use before the jury.  That information had already been imparted to the jury by the testimony of both Pierce and Florez as well as the results of the blood test conducted on Appellant after the accident.  Moreover, the hypothetical question directly related to Appellant's defensive theory that the Jeep may have spun out of control on the morning of the accident due to circumstances beyond Appellant's control.  Accordingly, the question clearly "fit" the facts of the case.  *See Blasdell,* 384 S.W.3d at 830; *see also Pyles*, 755

---

[19] Appellant also confusingly refers to the fact that Pierce never testified that Appellant smoked marijuana at the party they attended prior to the accident.  This is irrelevant, because the objected-to question concerned only to the prior incidents in which Florez and Pierce claimed the Jeep had spun out of control.

S.W.2d at 118 (party is entitled to propound hypothetical questions that "assume facts in accordance with his theory of the case").

We therefore conclude the trial court did not abuse its discretion in allowing the prosecutor to ask its expert witness the hypothetical question. *See McBride,* 862 S.W.2d at 609 (trial court did not err in allowing the prosecutor to ask its expert witness a hypothetical question based on facts established by the evidence at trial). Issue Six is overruled.

**The Trial Court did not Err in Admitting Evidence of Appellant's Past Marijuana Use**

In Issue Five, Appellant contends the trial court erred in allowing Florez's testimony that Appellant had used marijuana in the past, arguing that it constituted evidence of an extraneous offense not relevant to the charged offense and that it was highly prejudicial to his case. We agree with the State, however, that Appellant opened the door to this testimony during his cross-examination of Florez.

*Standard of Review*

We review the admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State,* 279 S.W.3d 336, 343 (Tex.Crim.App. 2009); *Knight v. State*, 457 S.W.3d 192, 201 (Tex.App. – El Paso 2015, pet. ref'd). A trial court does not abuse its discretion if the decision to admit or exclude the evidence is within the "zone of reasonable disagreement." *Montgomery,* 810 S.W.2d at 391; *Knight*, 457 S.W.3d at 201. A trial court's determination on the admissibility of extraneous-offense evidence typically falls within the zone of reasonable disagreement if the evidence shows: (1) that an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz,*

48

279 S.W.3d at 344; *Knight*, 457 S.W.3d at 201-02. If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we will not disturb it even if the trial court gave the wrong reason for the correct ruling. *De La Paz,* 279 S.W.3d at 344; *Knight*, 457 S.W.3d at 202.

*Analysis*

Evidence of extraneous offenses or prior wrongful acts is generally not admissible during the guilt-innocence phase as evidence that a defendant acted in conformity with his character by committing the charged offense, unless it is admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b); *Johnston v. State,* 145 S.W.3d 215, 219 (Tex.Crim.App. 2004); *Montgomery,* 810 S.W.2d at 386 (opin. on reh'g); *Moses v. State,* 105 S.W.3d 622, 626 (Tex.Crim.App. 2003); *Knight*, 457 S.W.3d at 202. But, "otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered 'opens the door.'" *Schutz v. State,* 957 S.W.2d 52, 71 (Tex.Crim.App. 1997).

A party opens the door by leaving a false impression with the jury that invites the other side to respond. *Hayden v. State,* 296 S.W.3d 549, 554 (Tex.Crim.App. 2009); *Williams v. State,* 301 S.W.3d 675, 687 (Tex.Crim.App. 2009) (assuming evidence of the defendant's prior crimes was inadmissible under Rule 404(b), the trial court did not abuse its discretion by admitting the evidence where defense counsel opened the door by deliberately asking a witness about the crimes). However, the party offering the evidence may not "stray beyond the scope of the invitation." *Schutz,* 957 S.W.2d at 71; *Hayden,* 296 S.W.3d at 554; *see Knight*, 457 S.W.3d at 202 ("By raising a defensive theory, the defendant 'opens the door' for the State to offer rebuttal

testimony regarding an extraneous offense if the extraneous offense has characteristics common with the offense for which the defendant was on trial.").

On cross-examination by defense counsel, Florez testified she did not observe anything to make her believe Appellant was intoxicated when he arrived at his mother's residence following the accident, and that he appeared to have the normal use of his mental and physical faculties at that time. On redirect, the prosecutor sought to inquire if Florez had been in Appellant's presence on prior occasions when he had imbibed alcohol or smoked marijuana, in an attempt to ascertain how he appeared on those occasions. Appellant objected to the question on relevance grounds, and the State argued that defense counsel had "opened the door" by having Florez testify that Appellant did not appear to be intoxicated on the morning of the accident. Over Appellant's objection, Florez was allowed to testify on redirect that she had been in Appellant's presence on previous occasions after he had smoked marijuana, and that Appellant acted "pretty much the same" after smoking marijuana, and that he did not "act much differently than he does normally."

Appellant contends that he did not open the door to having his prior marijuana use admitted, asserting that Florez's testimony did not leave a "false impression with the jury that could be dispelled by evidence of Appellant's marijuana use." Appellant appears to be contending that the only way he could have "opened the door" to his prior marijuana use was if he had elicited testimony from Florez that he did not use marijuana, thereby creating the false impression that he was not a marijuana user. We disagree.

As the State points out, the evidence was not elicited from Florez to clear up a false impression whether Appellant used marijuana, but how Appellant acted when he was under the

50

influence of marijuana. And, the evidence was used to clear up the false impression that Florez's testimony may have given to the jury that merely because Appellant appeared to have the normal use of his faculties on the morning of the accident, that necessarily meant he had not ingested intoxicating substances prior to the accident. The State argues that Florez's testimony regarding how Appellant normally appears while under the influence of marijuana or other intoxicating substances was not only relevant but necessary to clear up that false impression. We agree with the State.

On cross-examination, Florez testified that Appellant did not appear to have lost the normal control of his faculties after the accident, and that he was able to speak to her and the investigating officers as if he were sober. Defense counsel never asked Florez if she knew how Appellant typically acted when he was under the influence of alcohol or drugs. Therefore, the jury may have labored under the false impression that Appellant acted differently when he drank or took drugs, such as marijuana. Accordingly, the trial court could have reasonably concluded that it was necessary for the State to question Florez to clear up any potentially false impression. *See Daggett v. State,* 187 S.W.3d 444, 452 (Tex.Crim.App. 2005) (where a defendant testifies to a blanket statement of good conduct or character, he may "open the door" by leaving a false impression with the jury about a relevant act or character trait, and thereby allow the admission of evidence of extraneous acts that tend to rebut such testimony to impeach the defendant).

Appellant correctly points out, however, that even if the evidence was relevant to clear up a false impression, the trial court still had the discretion to exclude the evidence under Rule 403 if it found the evidence was more prejudicial than probative. *See, e.g., Hayden,* 296 S.W.3d at 554 (unless a witness's testimony created a false impression that was "directly relevant to the

51

offense charged," allowing a party to delve into the issue beyond the limits of cross examination may nevertheless be prejudicial if it wastes time and confuses the issues). Applying the *Gigliobianco* analysis,[20] Appellant argues that whether he smoked marijuana on prior occasions was not relevant to the charged offense, because that evidence would not establish that he was under the influence of marijuana at the time of the accident, thereby rendering the evidence of little or no probative value. Florez's testimony that Appellant appeared normal even after he had smoked marijuana in the past was relevant, however, because it could assist the jury in resolving whether Appellant was intoxicated at the time of the accident, rendering the evidence probative on a key element of the charged offense. Further, as explained above, the question whether Appellant was intoxicated was highly disputed by Appellant at trial. Therefore, the State had a great need to clarify any false impression Florez's testimony may have had on the issue of Appellant's intoxication.

Appellant argues that regardless of its probative value, the evidence of his prior marijuana use may have confused or otherwise misled the jury on why the evidence was being admitted. Appellant believes the jury may have considered the evidence to conclude that Appellant was a "habitual user of marijuana or that he had smoked marijuana that night prior to driving." In support of his argument, Appellant cites *Hankton v. State,* 23 S.W.3d 540, 543 (Tex.App. – Houston [1st Dist.] 2000, pet. ref'd), a cocaine possession case in which the appellate court concluded that the trial court erred in admitting evidence of two prior extraneous offenses in which defendant was found to have possessed large amounts of cocaine and cash. *Id.* at 543. The court held that the evidence was more prejudicial than probative, finding it significant that the State spent a significant amount of time developing the facts relating to the

[20] *See Gigliobianco,* 210 S.W.3d at 641-42.

extraneous criminal offenses, in a clear attempt to paint the defendant as an "established drug dealer," and to cause the jury to "react from a moral or emotional basis instead of from a rational and logical basis" in determining the defendant's guilt. *Id.* at 547-48.

In the present case, however, Appellant acknowledges that the State did not spend an inordinate amount of time developing the facts of his marijuana use, and instead, only asked Florez a short series of questions regarding Appellant's prior use and how it affected him. Further, unlike in *Hankton*, the prosecutor in the present case never attempted to paint Appellant as a chronic marijuana user, and never implied that he was involved in any ongoing criminal activity related to his alleged marijuana use. In fact, the prosecutor never once mentioned Appellant's prior marijuana use during her closing argument, and never urged the jury to consider Appellant's prior drug use as being indicative of his intoxication at the time of the accident. Instead, the prosecutor's sole focus in questioning Florez was on Appellant's typical countenance when he was under the influence of marijuana. Under these circumstances, we conclude the jury would have been misled or confused regarding the reason for the evidence's admission, or that the jury would have given it undue weight.[21]

Moreover, for similar reasons, even if the admission of this evidence were erroneous, it would not have affected Appellant's substantial rights. In particular, the jury would not have been unduly influenced by Florez's passing reference to Appellant's prior marijuana use, not only in light of the overwhelming evidence of Appellant's guilt, but also because Pierce testified,

---

[21] Appellant also contends that the jury may have been confused about why the evidence was being admitted because the trial court never gave the jury a limiting instruction to only consider the evidence for this limited purpose. It was Appellant's burden to request a limiting instruction, however, which he failed to do. *See Abdnor v. State*, 808 S.W.2d 476, 478 (Tex.Crim.App. 1991) (where evidence is admissible for a limited purpose and the court admits it without limitation, the party opposing the evidence has the burden of requesting a limiting instruction).

without objection, that he and Appellant had smoked marijuana together on a prior occasion. Issue Five is overruled.

## No Cumulative Error

In Issue Twelve, Appellant contends that if this Court agrees that the trial court committed more than one error at trial, but found those errors to be harmless in isolation, we should consider whether Appellant was nevertheless harmed by the cumulative effect of those errors. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999) ("It is conceivable that a number of errors may be found harmful in their cumulative effect."). However, we have concluded the trial court erred in only one respect and found that error to be harmless. Accordingly, the cumulative error doctrine does not apply. *See id.* (concluding the cumulative error doctrine was not applicable where it found no error in the record). Issue Twelve is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

STEVEN L. HUGHES, Justice

September 30, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

54